Argued October 26, affirmed no costs to either party November 29, 1976

# In the Matter of the Dissolution of the Marriage of
## ARCHER, *Respondent,*
### *and*
## ARCHER, *Appellant.*
### (No. 93624, CA 6328)
556 P2d 698

*Norman L. Lindstedt,* Portland, argued the cause for appellant. With him on the brief were David J. Buono and Lindstedt & Buono, Portland.

*Edwin J. Welsh,* Portland, argued the cause for respondent. With him on the brief were Welsh & Winfree, Portland.

Before Schwab, Chief Judge, and Thornton and Tanzer, Judges.

SCHWAB, C. J.

**SCHWAB, C. J.**

Wife appeals from an order denying her motion to set aside a decree of dissolution of marriage.

On December 1, 1975, while the dissolution proceedings were pending, wife discharged her attorney and, against his advice and the advice of husband's attorney, did not retain another attorney prior to the dissolution hearing. Though wife was notified at least three times that the hearing was set for January 30, 1976, she did not appear at that time. After hearing husband's testimony, the circuit court granted the petition for dissolution and adopted husband's proposed property division. On March 2, 1976, wife filed this motion to vacate the dissolution decree, on the ground that her mental condition at the time of the hearing was such that her failure to appear must be considered excusable neglect as specified in ORS 18.160.[1] The circuit court denied wife's motion on April 22, 1976.

A circuit court's denial of a motion to vacate pursuant to ORS 18.160 may be reversed only when the denial of the motion constitutes an abuse of discretion. *Becker v. Becker,* 271 Or 708, 533 P2d 1367 (1975). When the motion seeks to establish that a party's mental condition at the time of the original judgment compels a finding of excusable neglect, the circuit court's denial must stand unless the nature of that mental condition and the extent of the resulting disability is clearly shown. *Sibold v. Sibold,* 217 Or 27, 340 P2d 974 (1959).

Here, wife testified that she was extremely depressed and distraught at the time of the dissolution hearing, that she was contemplating suicide, and that she does not recall receiving many of the notices of the

---

[1] ORS 18.160 provides:

"The court may, in its discretion, and upon such terms as may be just, at any time within one year after notice thereof, relieve a party from a judgment, decree, order or other proceeding taken against him through his mistake, inadvertence, surprise or excusable neglect."

trial date sent to her. Wife's son testified that in the two-week period preceding the hearing his mother "couldn't control herself" and was generally quite distressed. However, the reports of two doctors who examined wife do not support wife's contentions. A letter from wife's physician to her present attorney indicates that wife's condition improved throughout January, 1976, and that by January 20, 1976, "she looked much less depressed and more relaxed." A psychiatrist who examined wife four days after the dissolution hearing found her to be "in good contact with reality * * * her sensorium[2] * * * clear, her memory adequate, and orientation proper."

■ Thus, the evidence elicited below was not unequivocal as to the nature and extent of wife's disability. Under these circumstances, we cannot say that the circuit court, which had the additional advantage of observing the witnesses, *see Held v. Held,* 8 Or App 280, 493 P2d 1388 (1972), abused its discretion in denying wife's motion to be relieved of the judgment of dissolution.

Affirmed. No costs to either party.

**TANZER, J.,** dissenting.

I dissent on the ground that the wife has demonstrated that her default resulted from excusable neglect, ORS 18.160, and that it was an abuse of discretion by the trial court to find to the contrary.

I recognize, as does the majority, that a motion to vacate a default decree is addressed to the discretion of the trial court. Discretion, however, is not without direction. It must be exercised according to legal principles. Thus, for example, the Supreme Court has reversed the denial of a motion to vacate a default judgment where the defendant's application was

---

[2]Webster's Third New International Dictionary (unabridged 1971) defines "sensorium" as "the parts of the brain that are concerned with the reception and interpretation of sensory stimuli."

"prompt" and the omission was the result of an "innocent mistake." *Snyder v. Consolidated Highway Co.,* 157 Or 479, 485, 72 P2d 932 (1937). Further, the rule should be applied with more favor to a defaulted defendant than to the plaintiff, with a view to providing to every litigant a day in court for "trial upon the merits of the controversy." 157 Or at 484.

Here, the motion to vacate the decree was made promptly. It was filed four weeks after the entry of the decree, well within the statutory limitation of one year, within the time for the filing of a notice of appeal which would have deferred the finality of the decree at least equally, and before the husband had acted to his detriment or remarried in reliance upon the decree, as in *Carmichael v. Carmichael,* 101 Or 172, 179, 199 P 385 (1921). Thus, the underlying statutory purpose of enabling people to rely upon the finality of decrees and judgments would not be offended by granting the wife's motion.

I further recognize that the burden upon one who moves to vacate a decree should be substantial. This record demonstrates that the movant has shown facts more grievous than in prior cases based upon ORS 18.160, and has proved them by greater evidence than in those cases.

For example, the majority relies upon *Sibold v. Sibold,* 217 Or 27, 340 P2d 974 (1959), for the proposition that the circuit court's denial of a motion to vacate based upon neglect due to mental condition "must stand unless the nature of that mental condition and the extent of the resulting disability is clearly shown." *Sibold v. Sibold, supra,* 217 Or at 33, the Supreme Court relied upon the paucity of evidence and stated:

"So far as plaintiff's charges of mental incapacity, fraud and inadequacy of proper legal representation, resulting in a grossly inadequate property settlement are concerned, we find practically no evidence to support the same. There is no evidence indicating anything other than nervous reaction to conditions. Her doctor, her

[ 559 ]

daughter, her neighbor gave no such testimony and her attorney did not so testify. Their evidence is to the contrary. She had competent legal advice and after negotiations the property settlement was entered into. The property involved was fairly and equitably distributed, if values fixed by defendant are accepted. If plaintiff's values are to be applied, then the difference would not be appreciably greater. Plaintiff has failed to sustain the burden of proof. * * *"

The quantum and nature of the evidence in this case is very different from that in *Sibold.* The wife testified that the parties had been married for 28 years, apparently happily, but that their life together terminated abruptly when the petitioner moved in with another woman. The wife reacted emotionally and she described her state of confusion and depression. She lost 35-40 pounds, suffered migraine headaches and was unable to work for two months.

The wife described her condition during this period variously. She said her "logic was completely off," her "reasoning was gone," and that much of the period is "blank" in her memory. She further described her "emotional upheaval" to the court:

"I would not wish it on a dog. It was so bad that—and it still is and I am holding together the best way I can. If someone had put a gun to my head and said this is what you are going to do and there is no way—I would have just—couldn't physically do anything to help myself. I was not able to. The letters I got from Mr. Steiner and Mr. Welsh would send me into another panic for thirty-six hours to the point where all I did [was] bawl and walk the floor. I wouldn't wish it on anybody but as far as coming into court, this is my first time in court. There was no way I could have possibly walked into this court even two weeks ago and I would not have been able to walk in here. They would have to pack me in and as it stands right now, I'm having a heck of a time staying here right now."

After discharging her first lawyer she contacted Robert A. Bennett, a Portland lawyer. On January 21, Mr. Bennett wrote to the court as a "personal

acquaintance" of both Mr. and Mrs. Archer, but as counsel for neither, to request a postponement of the trial on wife's behalf. His letter informed the court:

"I have been endeavoring to obtain new counsel for Mrs. Archer but she advises that she is in such an emotional state that she cannot talk to an attorney at this time about her case. She further indicates that her attending physician has removed her from her employment and that she has been referred to a psychiatrist on Tuesday, January 20. From my discussions with Mrs. Archer it is apparent that she is not in a position to face a trial at this time nor in all probability to even secure the services of an attorney and be of assistance to him by the scheduled trial date."

We may infer that Mr. Bennett has an appreciation of the requisite mental and emotional state for a litigant.

The 26-year-old son of the parties testified regarding the last two weeks in January immediately preceding the dissolution hearing:

"I probably spent three or four nights a week going out to the house to see how she was doing because she would call me at work or she'd call me at home and ask me to come over because she couldn't control herself. It took me half an hour to get there and she'd be crying uncontrollably. She was talking about suicide, incoherent things. Statements that were not attached to the one preceding or the one following."

The medical evidence supports the wife's testimony. Her physician reported as set out in the majority opinion, that her condition had improved by January 20, 1976, so that "she looked much less depressed and more relaxed," but the physician goes on to conclude, after a review of the treatment and consultation, that:

"From the above data I believe it is clear that there was definite evidence throughout the month of January that the patient was in no mental or emotional condition to very well handle a court appearance."

Her physician referred her to a psychiatrist. The majority opinion quotes from the report of the psychiatrist that on January 29 he found her to be "in good contact with reality * * *," but the majority

omits the remainder of the same sentence of the report, "and if her depression is brought under control, she should be capable of defending herself in any court action." In other words, her psychiatrist concluded that she was not able to defend herself in a court action because her depression was not yet under control. Thus, both of her physicians reported that wife's mental and emotional state prevented her from coping effectively with court proceedings.

Thus, unlike *Sibold,* upon which the majority relies, the testimony of the wife and of her son, together with the letter of Mr. Bennett and the opinions of the wife's regular physician and psychiatric physician, made all the more believable in the context of the situation in which the wife found herself at the unexpected end of a long marriage, all indicate clearly that her emotional state was such as to significantly impair her ability to participate meaningfully in the trial. Therefore, the implicit finding that wife's neglect was not excusable was contrary to the evidence.[1]

The trial court also found "that the property division contained in the decree of dissolution was a fair division in that respondent was in no way prejudiced because of her failure to appear at the trial." The fairness of the division, however, is supposed solely from the husband's evidence at the dissolution trial. Respondent testified in support of her motion that she wishes to assert that she should have been awarded the $15,000 equity in the duplex in which she resides, which the court awarded to the husband, and that the husband should be awarded the $8,500 equity in another duplex which had been awarded to her. She further claims that the assignment of $12,000 as the value of the furniture awarded to her was over-

---

[1]The trial court's finding on this issue is not explicit. The court found that wife had notice of the trial and apparently considered that to be dispositive. The issue of excusable neglect is not addressed in the court order. The order does not appear to be based upon an assessment of credibility.

evaluated by about $10,000. She further claims that the spousal support order should have been greater. The justice of her claims cannot be assessed and a finding of no prejudice to the wife cannot be made unless she has been heard.

The issue is whether the wife will have her day in court. Because the wife's neglect was excusable, because her application for relief was prompt, because the husband has not acted in reliance upon the decree, and because the wife had substantial claims regarding property and support which she wishes to present to the court, I would hold that the denial of her motion was an abuse of discretion and would reverse.